# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELINDA GLAVIN, Individually and on Behalf of All Others Similarly Situated;<br><br><br>Plaintiff,<br><br>v.<br><br><br>JP MORGAN CHASE BANK N.A. d/b/a CHASE BANK, JP MORGAN CHASE & CO., and EARLY WARNING SERVICES, LLC d/b/a ZELLEPAY.COM<br><br><br>Defendants. | Case No. 2:23-CV-01708-KBH |

**MEMORANDUM OF LAW IN OPPOSITION TO JPMORGAN CHASE BANK, N.A's AND EARLY WARNING SERVICES, LLC'S JOINT MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY THIS ACTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

   A.  Fraud is rampant on the Zelle platform............................................................................ 2

   B.  Plaintiff was the victim of fraud through the Zelle platform. ........................................... 3

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ............................................................................................................................ 6

   A.  Plaintiff Glavin did not agree to arbitrate her claims....................................................... 6

     I.  The arbitration provisions in the agreements are procedurally and substantively unconscionable. ........................................................................................................................ 6

       i.  The Chase agreements are procedurally unconscionable. ............................................ 6

       ii.  The Chase agreements are substantively unconscionable. ........................................... 8

     II.  Plaintiff's claims do not fall within the scope of the arbitration agreement. ................... 9

   B.  Zelle is not entitled to enforce the arbitration provisions in the Chase agreements. ......... 10

     I.  Zelle is not a third-party beneficiary to the Chase agreements and is not entitled to compel arbitration........................................................................................................................ 11

     II.  Zelle is not entitled to enforce the arbitration provision under the doctrine of alternative equitable estoppel. ................................................................................................................... 14

   C.  Plaintiff's claims against Zelle should not be stayed....................................................... 16

CONCLUSION........................................................................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*Abdurahman v. Prospect CCMC, LLC*, 2020 U.S. Dist. LEXIS 219732 (E.D. Pa. 2020) ....... 5, 16

*Allstate Ins. Co. v. Toll Bros.*, *Inc.*, 171 F. Supp. 3d 417 (E.D. Pa. 2016) .................................. 13

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........................................................... 7

*Burkett v. St. Francis Country House*, 2018 Phila. Ct. Com. Pl. LEXIS 45 .................................. 7

*California Crane Sch., Inc. v. Google LLC,* 621 F. Supp. 3d 1024 (N.D. Cal. 2022) ................. 17

*Clerk v. First Bank*, 735 F. Supp. 2d 170 (E.D. Pa. 2010) ............................................................ 7

*Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699 (E.D. Pa. 2015) ................................................... 10

*Drelles v. Mfrs. Life Ins. Co.*, 2005 PA Super 249, 881 A.2d 822 ................................................ 9

*Ellin v. Empire Today, LLC*, 2011 U.S. Dist. LEXIS 95639 (E.D. Pa. Aug. 24, 2011) ........... 6, 11

*Germantown Mfg. Co. v. Rawlinson*, 341 Pa. Super. 42, 491 A.2d 138 (Pa. Super. 1985)............ 6

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)........................................................ 8

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S. Ct. 2847 (2010) .................... 2

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013).......................... 5

*Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999) ...................................................... 6

*Hornicek v. Cardworks Servicing, LLC*, 2011 U.S. Dist. LEXIS 70125 (E.D. PA 2011) ..... 13, 14

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225 (3d Cir. 1998) ................. 13

*Jean v. Bucknell Univ.,* 2021 U.S. Dist. LEXIS 73384 (M.D. Pa. Apr. 16, 2021) .................... 8, 9

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ............................................................ 17

*Masad v. Weber*, 2009 S.D. 80, 772 N.W.2d 144 (S.D. 2009).................................................... 11

*Mendez v. Puerto Rican Int'l Cos., Inc.*, 553 F.3d 709 (3d Cir. 2009) ........................................ 17

*Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324 (E.D. Pa. 2004) .......................................... 14

*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022)........................................................................ 2

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir. 1980) ................................ 5

*Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221 (3d Cir. 2012) ..................................... 6

*Scarpitti v. Weborg*, 530 Pa. 366 (1992) ...................................................................................... 11

*Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474 (E.D. Pa. 2011) .. 5

*Takiedine v. 7-Eleven, Inc.*, 2021 U.S. Dist. LEXIS 142065 (E.D. Pa. 2021)........................... 6, 7

*Vasadi v. Samsung Elecs. Am., Inc.*, 2021 U.S. Dist. LEXIS 22899 (D.N.J. 2021). ............... 16-17

*White v. Sunoco*, 870 F.3d 257 (3rd Cir. 2017) ........................................................................... 12

*White v. Sunoco, Inc.* 189 F. Supp. 3d 486 (E.D. Pa. 2016) ...................................... 10, 11, 12, 15

*William F. Coyle v. 350 Haws Ln. Ops.,* , 2015 Pa. Dist. & Cnty. Dec. LEXIS 200 (C.P. 2015).. 8

*Yurth v. Experian Info. Sols., Inc.*, 622 F. Supp. 3d 89 (E.D. Pa. 2022)....................................... 13

## Statutes

15 U.S.C. §§ 1693, *et seq.*............................................................................................................. 4

73 P.S. §§ 201-1 – 201-10. ............................................................................................................ 4

9 U.S.C. § 2 ..................................................................................................................................... 9

## PRELIMINARY STATEMENT

Plaintiff Melinda Glavin ("Plaintiff) opposes JPMorgan Chase Bank, N.A. ("Chase") and Early Warning Services, LLC's d/b/a zellepay.com ("Zelle") (collectively, "Defendants") Joint Motion to Compel Individual Arbitration and Stay This Action. ECF 22.

Plaintiff's statutory and tort claims against defendants are based on a series of fraudulent Zelle transactions initiated by *unauthorized third-party fraudsters* that resulted in deductions of $6,500 from her Chase account. Despite defendants' statutory obligations to investigate such unauthorized activity and to credit legitimate fraud claims back to consumers, plaintiff was not reimbursed. Notably, fraud is rampant on the Zelle platform, and plaintiff is just one of thousands of consumers who have been the victim of fraud on this platform.

Defendants attempt to escape liability for their role in enabling the rampant fraud on the Zelle platform and their refusal to refund legitimate fraud claims, as required by law, by incorrectly characterizing plaintiff's allegations as claims that are subject to arbitration provisions in agreements purportedly signed by plaintiff in relation to her Chase account.[1] Contrary to defendants' contention, plaintiff's claims involving transactions that she did not authorize and that were conducted through the Zelle platform—which is not referenced once in any version of the Chase agreements—are not subject to arbitration.

Importantly, in support of their motion, defendants repeatedly rely on the Federal Arbitration Act's purported "policy favoring arbitration" to support their position. However, defendants misstate the FAA's purpose and policy. As the U.S. Supreme Court held last year, the

---

[1] According to defendants, plaintiff signed two relevant agreements when she opened her account (collectively, the "Chase agreements"). The first agreement is the Deposit Account Agreement ("DAA"), which governs "your account." ECF 20-1 at 6; ECF 20-1–20-4. The second agreement is the Digital Services Agreement ("DSA"), which "governs your use of the Digital Platforms and Services." *See* ECF 19-1 at 2; ECF 19-1–19-4. Defendants contend that plaintiff's claims are subject to arbitration under both agreements. ECF 22 at 7.

FAA's "policy [favoring arbitration]" is "merely an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon *the same footing as other contracts*." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S. Ct. 2847 (2010)) (emphasis added). In other words, the purpose of the FAA is to make "arbitration agreements as enforceable as other contracts, but not more so." *Id*. Thus, the "presumption of arbitrability" that defendants repeatedly rely on to support their motion to compel arbitration *does not equate to* a presumption in favor of arbitrability when, as here, the principles of state contract law prove otherwise.

Plaintiff's claims against Chase and Zelle are not subject to arbitration, and this Court should deny defendants' motion in its entirety. Alternatively, if this Court concludes that only plaintiff's claims against Chase are subject to arbitration, plaintiff requests that she be allowed to proceed with litigating her claims against Zelle.

## FACTUAL BACKGROUND

### A. Fraud is rampant on the Zelle platform.

Zelle is a digital money transfer platform that was created in 2017 by several of the nation's largest banks. ECF 1 ¶ 24. The Zelle service is embedded in mobile applications for participating banks, including Chase, but users can also independently download the Zelle app. *Id*.

Zelle misleadingly markets itself to consumers as a "fast, safe, and easy" way to instantaneously send money to peers at other participating banks. *Id*. ¶ 36. Zelle touts the fact that "authentication and monitoring features are in place to help make your payments secure when you're sending or receiving money." *Id.* ¶ 37. Moreover, Zelle's "Financial Education" webpage describes the types of transactions that are considered "unauthorized" and assures users

that "you are typically able to get your money back after reporting the incident." *Id*. ¶ 38. Chase's website similarly includes misleading representations about the Zelle platform and markets the platform as "Fast, Convenient, Secure." *Id.* ¶ 39. In perhaps its most misleading message, Chase states: "[t]he benefits of sending and receiving money are already in the Chase Mobile app, so there is no new app to download or extra steps to take." *Id.* ¶ 40.

Based on the misleading representations independently featured on the Chase and Zelle websites, consumers are led to believe that transactions sent over the Zelle platform are subject to the same protections against fraud and unauthorized activity that exist for traditional bank-issued credit and debit card transactions. *Id*. ¶¶ 24-41. However, this is not the case. While the networks that process traditional debit and credit transactions have implemented robust fraud protections for consumers, these same protections do not apply to the Zelle platform. *Id*. ¶ 30.

As part of Zelle's surge in popularity among the general public, it has also gained popularity among fraudsters who frequently take advantage of the platform's weak infrastructure and the irreversible nature of Zelle transfers. *Id*. ¶ 28. In fact, in 2022, the rampant fraud on the Zelle platform caught the attention of lawmakers, who wrote to the bank owners of Zelle, and called out the banks for not doing enough to prevent fraud on their peer-to-peer networks. *Id*. Importantly, according to Senator Elizabeth Warren's analysis of bank data from several large financial institutions, the bulk of the unauthorized transactions reported to banks through all platforms, including Zelle, "are going unpaid." *Id*. ¶ 31.

**B.  Plaintiff was the victim of fraud through the Zelle platform.**

Despite safeguarding her Zelle login information, plaintiff was a victim of fraud on the Zelle platform. *Id*. ¶ 67. From June 6, 2022 to June 8, 2022, plaintiff was traveling with her domestic partner from her home in Pennsylvania on a trip to New Jersey. *Id*. ¶¶ 54-59. During her trip, unauthorized transactions totaling $6,500 were initiated from her Chase account through

Zelle. *Id.* The transactions were initiated by *unauthorized third-party fraudsters* and sent to the accounts of unknown persons named "Kimberly" and "Erhauyi." The transactions were also accompanied by suspicious descriptions like "mining fee," "tax," and "remainder." *Id.*

As soon as plaintiff returned from her trip, she discovered the unauthorized Zelle transactions and immediately contacted Chase to dispute the transactions. *Id.* ¶ 61. She proceeded to follow Chase's protocol concerning fraud claims. *Id.* ¶¶ 61-65. After completing the requisite steps to file a claim, Chase provisionally credited her account the full amount that was stolen through the fraudulent Zelle transactions. *Id.* ¶ 63. However, on June 24, 2022, Chase reversed the provisional credit and refused to refund plaintiff based on the erroneous conclusion that the unauthorized Zelle transactions were allegedly processed "according to the information you provided or was authorized." *Id.* ¶ 64. Even after Chase wrongfully denied her reimbursement, plaintiff continued to submit evidence, to no avail, confirming that the transactions were indeed unauthorized. *Id.* ¶ 65-66.

Based on the allegations above, plaintiff filed a class action complaint alleging negligence claims alongside violations under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq.* and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1–201-10.

## LEGAL STANDARD

Under these circumstances, defendants' motion to compel arbitration is governed by the summary judgment standard set forth in Fed. R. Civ. P. 56.

The complaint is the "primary guidepost" in determining whether to apply the Rule 12(b)(6) standard or the Rule 56 standard to a defendant's motion to compel arbitration. *Abdurahman v. Prospect CCMC, LLC*, 2020 U.S. Dist. LEXIS 219732, *5 (E.D. Pa. Nov. 24, 2020). Importantly, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived

of a day in court, there should be an express, unequivocal agreement to that effect." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980).

When it is "unclear" from the pleadings whether arbitration is appropriate, then resort to Rule 56 is proper. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). A motion to compel arbitration is reviewed under the Rule 12(b)(6) standard only when "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" *Id.* (citing *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).

Here, the issue of arbitrability is not apparent on the face of plaintiff's complaint. Plaintiff does not once reference the Chase agreements in her complaint; she does not attach copies of the agreements to her complaint; and she does not allege any breach of contract claims. Plaintiff alleges statutory and tort-based claims, which are wholly unrelated to the Chase agreements and the provisions contained therein. Thus, the issue of arbitrability is not apparent from the face of plaintiff's complaint, and defendant's motion to compel arbitration should analyzed be under the Rule 56 summary judgment standard.

Under the Rule 56 standard, defendants' motion cannot be granted if there is a genuine dispute as to any material facts in this case, and this Court must "draw all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F.3d 764 at 772.

**ARGUMENT**

**A.  Plaintiff Glavin did not agree to arbitrate her claims.**

Under the Federal Arbitration Act, arbitration agreements are to be enforced only when courts determine that: (1) there is a valid agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement. *Ellin v. Empire Today, LLC*, 2011 U.S. Dist. LEXIS 95639, *7 (E.D. Pa. Aug. 24, 2011). Here, the Chase agreements and the arbitration provisions contained therein are unconscionable. Furthermore, plaintiff's claims do not fall within the scope of the Chase agreements because her claims stem from an incident involving fraudulent activity initiated by an *unauthorized third party* on the Zelle platform.

**I.      The arbitration provisions in the agreements are procedurally and substantively unconscionable.**

The arbitration provisions contained in the Chase agreements are unconscionable and thus, unenforceable. Under Pennsylvania law, the doctrine of unconscionability is a "defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) (citing *Germantown Mfg. Co. v. Rawlinson*, 341 Pa. Super. 42, 491 A.2d 138, 145 (Pa. Super. 1985)). The party challenging a contract provision as unconscionable must show that the provision is both procedurally and substantively unconscionable. *See id*. at 181. Moreover, Pennsylvania law recognizes a "sliding scale approach" so that "where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required." *Takiedine v. 7-Eleven, Inc.*, 2021 U.S. Dist. LEXIS 142065, *18 (E.D. Pa. 2021).

**i.      The Chase agreements are procedurally unconscionable.**

Under Pennsylvania law, contracts of adhesion are "generally considered to be procedurally unconscionable." *Takiedine*, 2021 U.S. Dist. LEXIS 142065 at *19 (citing *Quilloin*

*v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 235 (3d Cir. 2012)). Contracts of adhesion are inherently unequal because they are prepared by an entity in a higher bargaining power to be signed by a weaker party who has no say in the terms of the agreement. Importantly, most standard-form consumer contracts, like the Chase agreements, are deemed adhesive. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) ("the times in which consumer contracts were anything other than adhesive are long past"). Courts consider three factors in determining whether a contract of adhesion is procedurally unconscionable: (1) "the take-it-or-leave-it nature of the standardized form of the document[,]" (2) "the parties' relative bargaining positions," (3) "and the degree of economic compulsion motivating the 'adhering' party." *Takiedine*, 2021 U.S. Dist. LEXIS 142065 at *19. Under this analysis, the Chase agreements are procedurally unconscionable.

The Chase agreements are undeniably "take-it-or-leave-it" contracts because Chase unilaterally designed the terms of the agreement and plaintiff was required to agree to those terms to open her checking account. ECF 17 at 2 ("[i]n order for a customer to open a new Chase checking account digitally, a customer *needs to acknowledge* they have read and accepted the terms of the Deposit Account Agreement, the Digital Services Agreement, and the Online and Mobile E-Sign Disclosure and Consent Agreement") (emphasis added). Furthermore, Chase dominates the consumer banking industry, and as a result, plaintiff was in a weaker bargaining position. *See Clerk v. First Bank*, 735 F. Supp. 2d 170, 182 (E.D. Pa. 2010) (noting that defendant was a "large banking institution which regularly engages in complicated financial and legal transactions, and therefore enjoyed a superior bargaining position").

Finally, the arbitration provision itself was buried at the end of contracts exceeding twenty pages and was not easily visible to plaintiff. *See Burkett v. St. Francis Country House*,

2018 Phila. Ct. Com. Pl. LEXIS 45, *35 (procedural unconscionability found where, among other issues, arbitration clause was "inconspicuously tucked into the middle of a 27-page document").

The Chase agreements, and the arbitration provisions contained therein, are procedurally unconscionable.

### ii.   The Chase agreements are substantively unconscionable.

Substantive unconscionability requires plaintiffs to show that the terms of an agreement are "unreasonably favorable" to the defendant. Here, the Chase agreements substantially limit plaintiff's statutory rights and remedies, and courts have held such restrictions to be substantively unconscionable. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (noting that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute …").

First, the arbitration provisions in the Chase agreements impermissibly limit plaintiff's ability to recover punitive damages. *See Jean v. Bucknell Univ.,* 2021 U.S. Dist. LEXIS 73384, *20 (M.D. Pa. Apr. 16, 2021) (noting arbitration provisions imposing "limitations on remedies" as one type of provision that could be substantively unconscionable); *see also William F. Coyle v. 350 Haws Lane Operations,* No. 13-00375, 2015 Pa. Dist. & Cnty. Dec. LEXIS 200, *20 (C.P. Mar. 12, 2015) ("[a]ny attempt at binding such a consumer to an agreement that limits any damages recognized by Pennsylvania law should not be enforced. Indeed, as above discussed, Pennsylvania public policy embraces the recognition that ***punitive damages play a significant role in curbing outrageous conduct*** …") (emphasis added). Plaintiff is entitled to treble damages under the EFTA and the UTPCL. 15 U.S.C. § 1693f (e); 73 P.S. § 201-9.2. However, the text of the Chase agreements imposes restrictions on an arbitrator's ability to award punitive

damages. *See* ECF 19-1 at 35; 19-2 at 37; 19-3 at 38; *see also* ECF 20-1 at 22; 20-2 at 21; 20-3 at 23; 20-4 at 23. These restrictions substantially limit plaintiff's substantive remedies.

Second, the Chase agreements impermissibly shorten the statute of limitations period for plaintiff to arbitrate her claims under the UTPCPL from six years to two years, thereby further hindering plaintiff's ability to vindicate her statutory rights. *See Drelles v. Mfrs. Life Ins. Co.*, 2005 PA Super 249, 881 A.2d 822, 831 ("statute of limitations for UTPCPL claims is six years"); ECF 20-1 at 24; 20-2 at 24; 20-3 at 25; 20-4 at 26 (under the DAA, consumers "must file any lawsuit or arbitration against us within two years after the cause of action arises …").

In addition to these significant contractually imposed limits on plaintiff's statutory rights, the Chase agreements also include an impermissible "unilateral modification" clause, which gives Chase the sole authority to modify the terms of the contract. *See* ECF 20-1 at 22; 20-2 at 22; 20-3 at 23; 20-4 at 23; ECF 19-1 at 4; 19-2 at 5; 19-3 at 5. Courts in this jurisdiction have held "[a]s a general matter, 'an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory.'" *Jean,* 2021 U.S. Dist. LEXIS 73384 at *27 (concluding that unilateral modification in one section of a contract was substantively unconscionable). Accordingly, the Chase agreements are both procedurally and substantively unconscionable and are thus unenforceable.

## II.     Plaintiff's claims do not fall within the scope of the arbitration agreement.

The FAA only applies to disputes "arising out of such contract or transaction." 9 U.S.C. § 2. Here, plaintiff's claims concerning fraudulent transactions initiated by an *unauthorized third party* do not arise out of any of the Chase agreements.

Both the DAA and DSA explicitly apply to plaintiff's *own use* of Chase's services *or* use by an *authorized third party*. For example, the DAA states "[b]y signing a signature card or submitting an account application, or by using any of our deposit account services, you and

anyone else identified as an owner of the account agree to the terms in this agreement." ECF 20-1 at 6. Similarly, the DSA governs "your use of the following websites and mobile applications" and further notes that customers "agree to the terms and conditions of this Agreement" when "*you use or access, or permit … any other person(s)* or entitiy(ies) to use or access [the platforms]." ECF 19-1 at 2 (emphasis added).

Here, the fraudulent activity associated with plaintiff's account was not initiated by her, nor was it initiated by someone with permission to access her accounts. Thus, the fraudulent activity on which plaintiff's claims are based is unrelated to the Chase agreements. Moreover, the fraud was conducted through Zelle, which is a platform not referenced once in the Chase agreements. Plaintiff's claims simply do not fall within the scope of the arbitration agreements.

## B.  Zelle is not entitled to enforce the arbitration provisions in the Chase agreements.

Defendants incorrectly contend that Zelle is entitled to enforce the arbitration provisions under the "third-party beneficiary" and "equitable estoppel" doctrines even though it is not a signatory to, or even referenced in, the Chase agreements. To support this contention, defendants point to extraordinarily broad provisions in the Chase agreements that purport to extend the arbitration requirement to unspecified "third parties." Defendants' contention plainly contradicts the prevailing principle in this jurisdiction that the "presumption [in favor of arbitration] ***does not apply in situations … involving a non-signatory to an arbitration agreement.***" *Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699, 712 (E.D. Pa. 2015) (emphasis added); *White v. Sunoco, Inc.* 189 F. Supp. 3d 486, 493 (E.D. Pa. 2016). Thus, the Chase agreements and the arbitration provisions contained therein do not automatically transform a non-signatory like Zelle—an entity not referenced even once in the agreements—into a party with enforceable contractual rights. Zelle is not entitled to enforce the arbitration provisions in the Chase agreements.

I.     **Zelle is not a third-party beneficiary to the Chase agreements and is not entitled to compel arbitration.**

Under Pennsylvania law, a "party claiming to be a third-party beneficiary must show that the contract was entered into by the parties directly and primarily for his benefit." *White*, 189 F. Supp. 3d 486 at 493 (internal quotation mark omitted). Furthermore, the contracting parties "must have expressed an intention that the third-party be a beneficiary," and the intention "must have affirmatively appeared in the contract itself." *Scarpitti v. Weborg*, 530 Pa. 366, 370 (1992). "[A] mere showing of an incidental benefit is insufficient." *White*, 189 F. Supp. 3d 486 at 493 (citing *Masad v. Weber*, 2009 S.D. 80, 772 N.W.2d 144, 154 (S.D. 2009))

Courts in this jurisdiction have concluded that a non-signatory party can only enforce an arbitration provision in an agreement when the provision's text *unambiguously* covers disputes involving the non-signatory. *White*, 189 F. Supp. 3d 486 at 493-94; *see also Ellin,* 2011 U.S. Dist. LEXIS 95639 (E.D. Pa. Aug. 24, 2011) (non-signatory subcontractor could not compel arbitration under a provision that referenced "Contractor" and "Buyer(s)").

The most instructive case on this matter is *White v. Sunoco*. There, the court refused to allow non-signatory Sunoco to enforce an arbitration clause in a credit card agreement between Citibank and the plaintiff, a Citibank customer. *White*, 189 F. Supp. 3d 486 at 496. In *White*, Sunoco partnered with Citibank to offer a special "Sunoco Rewards Credit Card." *Id.* at 488. The plaintiff's claims were based on Sunoco's alleged misconduct in administering a refund program connected with the credit card, and Sunoco tried to compel arbitration as a third-party beneficiary of a "Cardholder Agreement" signed between the plaintiff and Citibank in connection with the rewards card. *Id.* at 490. The court held that Sunoco was not a third-party beneficiary of the agreement because the "[a]greement does not even mention Sunoco or the Rewards Card Program" and the arbitration provision itself "limits its application to "you" and

11

"us"—i.e., Citibank and the cardholder." *Id.* at 493. Moreover, the provision's broad language covering "[c]laims made by or against anyone connected with [Citibank]" did not "transform Sunoco and all other vendors into third party beneficiaries."[2] *Id.* Ultimately, in spite of Sunoco's partnership with Citibank to administer a credit card bearing Sunoco's name, Sunoco could not rebut the presumption in this district that non-signatories should not be entitled to enforce arbitration provisions absent a clear contractual mandate.

Importantly, Sunoco appealed the district court's decision, and on appeal, the Third Circuit affirmed the lower court's ruling on the third-party beneficiary issue. *White v. Sunoco*, 870 F.3d 257, 267 (3rd Cir. 2017). It concluded, "Sunoco's argument fails because ***it confuses the nature of the claims covered by the arbitration clause with the question of who can compel arbitration.*** Even if Sunoco is 'connected' with Citibank and the claims against Sunoco are covered claims, that does not give Sunoco the right to elect to arbitrate against White." *Id.* (emphasis added).

Just as Sunoco was not an intended beneficiary of the Citibank "Cardholder Agreement," Zelle is not an intended beneficiary of the Chase agreements. First and foremost, no version of the Chase agreements references the Zelle platform or Early Warning Services. Second, the arbitration provisions in the Chase agreements plainly limit coverage to disputes between Chase and its customers. For example, the DAA's arbitration provision applies to "[c]laims or disputes between ***you*** and ***us***[,]" which is identical to the limiting language in the agreement in *White*. ECF 20-1 at 25; 20-2 at 24; 20-3 at 26; 20-4 at 26 (emphasis added). Similarly, the arbitration

---

[2] Although the Third Circuit applied South Dakota law, the analysis and outcome are identical under Pennsylvania law. *See White*, 189 F.Supp 3d 486, 491 ("the forum law (Pennsylvania), the law governing the Cardholder Agreement (South Dakota)… all set out the same framework for determining whether non-signatory Sunoco may enforce the arbitration requirement against Plaintiff").

provision in the DSA applies to disputes between "YOU" and "WE." ECF 19-1 at 36; 19-2 at 38; 19-3 at 39.

Furthermore, the Chase agreements' broad provision extending arbitration to unspecified "third parties" is not a legitimate basis to allow Zelle to enforce the arbitration clause. The provision defines third parties to include "affiliates," "agents," and "representatives," but this language provides no clarity as to which entities are included. *See*, *e.g.*, *Allstate Ins. Co. v. Toll Bros.*, *Inc.*, 171 F. Supp. 3d 417, 435 (E.D. Pa. 2016) (arbitration provision in agreement between homebuyer and developer covering disputes involving "subsidiaries or affiliates" did not allow subcontractor to compel arbitration as a third-party beneficiary of the agreement); *Yurth v. Experian Info. Sols., Inc.*, 622 F. Supp. 3d 89, 98 (E.D. Pa. 2022) ("[m]oreover, the arbitration clause's broad definition of "Claims" is beside the point"). Such broad, undefined language is insufficient to warrant the *disfavored practice* of allowing non-signatories to enforce an arbitration clause. Accordingly, Zelle is not a third-party beneficiary of the Chase agreements.

Defendants cite to several cases to support their argument, all of which are very much distinguishable from the case here. Both *Prudential* and *Hornicek* concerned arbitration clauses that clearly referenced the non-signatory defendants. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225 (3d Cir. 1998); *Hornicek v. Cardwords Servicing, LLC*, 2011 U.S. Dist. LEXIS 70125 (E.D. PA June 29, 2011). In *Prudential*, the arbitration provision applied to disputes involving members of the National Association of Securities Dealers (NASD), and defendant Prudential was an NASD member. *Prudential*, 133 F.3d 225 at 228. Moreover, in *Hornicek v. Cardwords Servicing, LLC*, the arbitration provision explicitly covered disputes related to "*the collection* of amounts you owe in connection with your Account …." *Hornicek*, 2011 U.S. Dist. LEXIS 70125 at *2 (emphasis added). Based on this unambiguous text, the court

held that a non-signatory *debt collector* acting in concert with the bank could compel arbitration under the terms of the provision covering *collection of debts*. Unlike these cases, the arbitration provisions in the Chase agreements make no clear and unambiguous reference to disputes involving Zelle or Early Warning Services.

Because Zelle is not a third-party beneficiary of the Chase agreements, it is therefore not entitled to enforce the arbitration provisions in those agreements.

## II.     Zelle is not entitled to enforce the arbitration provision under the doctrine of alternative equitable estoppel.

Next, defendants incorrectly contend that Zelle is entitled to enforce the arbitration provisions under the doctrine of alternative equitable estoppel ("alternative estoppel"). In this case, however, because plaintiff alleges statutory and tort claims that are independent of and unrelated to the defendants' contractual obligations, alternative estoppel does not apply.

Under Pennsylvania law, the doctrine of "alternative estoppel" requires non-signatories to show an "obvious and close nexus" between the non-signatories and the contract *or* between the non-signatories and the contracting parties. *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 333 (E.D. Pa. 2004). To establish a "close nexus," the non-signatory must show: "(1) … a close relationship between it and a signatory; and (2) that the alleged wrongs are related to a non-signatory's **contractual obligations and duties**." *Id.* (emphasis added). The essential question under the alternative estoppel doctrine is whether plaintiffs "would have an independent right to recover against the non-signatory Defendants even if the contract containing the arbitration clause were void." *Id*. In other words, if a plaintiff's claims are premised on claims involving *non-contractual obligations*, then the non-signatory defendant will not prevail on an alternative estoppel theory.

Here, because plaintiff's claims are based on non-contractual obligations imposed on Chase and Zelle, the doctrine of alternative estoppel does not apply. On this point, the court's decision in *White* is again instructive. There, the court held that alternative estoppel did not apply to defendant Sunoco because the plaintiff's fraud-based tort claims were "independent from" any obligations outlined in the cardholder agreement between plaintiff and Citibank. *White*, 189 F. Supp. 3d 486 at 495. It specifically noted that the plaintiff "alleged only Sunoco's tort-based fraud, not breach of contract (as might be expected if he were relying on the Agreement.)" *Id*.

Similarly, plaintiff Glavin does not allege that Chase or Zelle breached any contract with her. Rather, plaintiff's claims are based on misconduct that is *independent from* the Chase agreements, including statutory claims under the EFTA and the UTPCPL along with a tort-based negligence claim. ECF 1 ¶¶ 103-122; 123-128; 129-157. To support her EFTA claims, plaintiff has alleged that both Chase and Zelle are covered entities under the EFTA and had obligations under the statute to create and implement adequate "error resolution" policies to resolve consumer claims regarding unauthorized electronic fund transfers ECF 1 ¶¶ 46-49; 11. Similarly, under the UTPCPL, both Chase and Zelle are covered "persons" as defined in the statute. ECF 1 ¶ 130. Plaintiff alleges that defendants engaged in several "unfair trade practices" defined in the statute, including "[r]epresenting that good or services have … characteristics … that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality or grade, if they are of another"; "[a]dvertising services with intent not to sell them as advertised"; and "[f]ailing to comply with the terms of any written guarantee or warranty…" ECF 1 ¶ 132. Importantly, plaintiff supports her UTPCPL claim by alleging separate misrepresentations featured on Zelle's and Chase's websites, which misled consumers to believe that the platforms were secure and that fraudulent activity would be remedied. *Id.* ¶¶ 36-42. Finally, plaintiff's negligence claim against

Chase and Zelle sounds in state tort law, and she alleges that each defendant was independently negligent. ECF 1 ¶ 124-125.

As described above, each cause of action alleged by plaintiff imposes obligations on Zelle and Chase that exist outside of the Chase agreements, and plaintiff is not equitably estopped from pursuing her claims against Zelle in court. *See*, *e.g.*, *Abdurahman*, 2020 U.S. Dist. LEXIS 219732 at *16 (non-signatory "sister entity" could not compel arbitration under alternative estoppel theory because the plaintiff "would still have valid causes of action against CCMC grounded in common law and statutory remedies" even if the agreement invoked by the non-signatory was void).

Because the doctrine of alternative estoppel does not apply to claims that are independent of any contract, Zelle is not entitled to enforce the arbitration clause in the Chase agreements, which only applies to disputes between Chase and its cardholders, not third parties.

### C.  Plaintiff's claims against Zelle should not be stayed.

In the event that this Court determines that plaintiff is only required to arbitrate her claims against Chase, this Court should allow litigation to proceed against Zelle. In that circumstance, staying the claims against Zelle would only serve to prejudice plaintiff and delay the ultimate resolution of this litigation.

According to the Third Circuit, "in order for a party to be the subject of a mandatory stay pending arbitration under Section 3 of the FAA, that party must have committed itself to arbitrate one or more issues …." *Mendez v. Puerto Rican Int'l Cos., Inc.*, 553 F.3d 709, 715 (3d Cir. 2009). "The mandatory stay does not apply to parties who have not agreed to arbitrate, even when those parties … are joined together in the same lawsuit with parties who are bound by an arbitration agreement." *Vasadi v. Samsung Elecs. Am., Inc.*, 2021 U.S. Dist. LEXIS 22899, *32 (D.N.J. Nov. 29, 2021).

Rather, the decision of how to manage non-arbitrable claims is to be made "in accordance with the discretion of the court." *Mendez*, 553 F.3d at 712. In evaluating a stay of claims against non-parties to an arbitration agreement, the court must "weigh the parties' competing interests and balance their relative hardships." *Vasadi*, 2021 U.S. Dist. LEXIS 22899, at *33. These factors include "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and a trial date has been set." *Id.* at *33-34 (quoting *Eagle View Tech., Inc. v. Xactware Solutions, Inc.*, 2016 U.S. Dist. LEXIS 169038, *3 (D.N.J. Dec. 7, 2016)); *see also California Crane Sch., Inc. v. Google LLC*, 621 F. Supp. 3d 1024, 1033 (N.D. Cal. 2022). The burden "falls on the party requesting a stay of proceedings to 'make out a clear case of hardship or inequity in being required to go forward.'" *Vasadi*, 2021 U.S. Dist. LEXIS 22899, at *34 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).

Here, plaintiff would be significantly prejudiced if her claims against Zelle are stayed. Plaintiff has lost $6,500 due to fraud on the Zelle platform, and Zelle has refused to reimburse or compensate her in any way. Moreover, as described above, fraud is rampant on the Zelle platform, and Zelle has not taken the appropriate steps to safeguard its platform or prevent future incidences of fraud against plaintiff or other users. Thus, plaintiff continues to be at risk of being the victim of further fraud conducted through the Zelle platform.

In light of these continuing harms, plaintiff should not be forced to follow a time-consuming arbitration process with Chase before she can vindicate her rights against Zelle—an independent third party with which she did not agree to arbitrate.

Furthermore, no decision in arbitration against a different party, Chase, would bind this court as to Zelle. *See Vasadi*, 2021 U.S. Dist. LEXIS 22899, at *36 (denying similar stay requested by non-party to arbitration agreement because non-party would "not be bound by any outcome of arbitration proceedings in which they did not participate"). It would serve no purpose to wait until the arbitration with Chase is complete to begin litigation against Zelle. As in *Vasadi*, the "simplification of legal and factual issues is not evident here." *Id.*

Zelle has not demonstrated that the impact of any arbitration proceedings with Chase "would be more than minimal" in this case. *Id.* But a stay of plaintiff's claims against Zelle while arbitration proceeds against Chase "would delay [her] from pursuing relief, impact [her] right to litigate, and work a clear disadvantage on [her]." *Id.* Because Zelle has not met its burden, any stay of plaintiff's claims against Zelle pending arbitration with Chase should be denied.

## CONCLUSION

This Court should deny the defendants' motion to compel arbitration in its entirety. In the event this Court grants arbitration only as to Chase, this Court should allow plaintiff to litigate her claims against Zelle.

Dated: August 11, 2023

**SCHUBERT JONCKHEER & KOLBE LLP**


*/s/* Amber L. Schubert

AMBER L. SCHUBERT (S.B.N. 278696)
ROBERT C. SCHUBERT (S.B.N. 62684)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone:      (415) 788-4220
Facsimile:      (415) 788-0161
E-mail:          rschubert@sjk.law
                 aschubert@sjk.law


JAMES C. SHAH (Bar No. 80337)
ALEC J. BERIN (Bar No. 328071)
**MILLER SHAH LLP**
1845 Walnut Street, Suite 806
Philadelphia, Pennsylvania 19103
Telephone:      (866) 540-5505
                (866) 300-7367
Email:          jcshah@millershah.com
                ajberin@millershah.com


*Attorneys for Plaintiff Glavin and the Putative Class*