IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MELINDA GLAVIN, Individually and on behalf of all others similarly situated,** Plaintiff, | **CIVIL ACTION** |
| **v.** | |
| **JPMORGAN CHASE BANK, N.A., and EARLY WARNING SERVICES, LLC, d/b/a ZELLEPAY.COM,** Defendants. | **NO. 23-1708** |

## MEMORANDUM

**HODGE, J.**                                                                 **April 9, 2024**

## I.     INTRODUCTION

Before the Court is Defendants JPMorgan Chase Bank, N.A. ("Chase") and Early Warning Services, LLC d/b/a Zellepay.com's ("Zelle") (collectively, "Defendants") Joint Motion to Compel Arbitration and Stay This Action and Memorandum, Affidavits, and Proposed Order in support thereof (together, the "Motion"). (ECF Nos. 16–23.) Plaintiff Melinda Glavin ("Plaintiff") opposed the Motion (ECF No. 30), and Defendants filed a reply in further support of the Motion (ECF No. 31). Defendants also filed a Notice of Supplemental Authority in further support of the Motion (ECF No. 32) and Plaintiff filed a response in opposition thereto (ECF No. 33). For the reasons that follow, the Court grants the Motion to Compel Arbitration and will Stay This Action.

## II.     BACKGROUND[1]

On May 4, 2023, Plaintiff—a Chase customer—filed the operative Complaint in which she claims that she was "a victim of fraudulent activity targeting customers of Chase in connection with the Zelle mobile application and resulting in $6,500 being debited from her checking account

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

without her authorization." (ECF No. 1 ¶1.) Plaintiff asserts a negligence claim and claims under

The Electronic Fund Transfer Act, 15 U.S.C. § 1693 ("EFTA") and the Pennsylvania Unfair Trade

Practices and Consumer Protection Law, 73 P.S. §§ 201-1–201-10 ("UTPCPL"). (*See generally*

ECF No. 1.)

In their Motion, Defendants assert that Plaintiff's relationship with Chase is governed by

two agreements—"the Deposit Account Agreement (the "DAA"), which governs all Chase bank

accounts, and the Digital Services Agreement (the "DSA") (together, the "Agreements"), which

governs the accountholder agreement relating to online banking services including through

websites and mobile applications." (ECF No. 22 at 1–2.) Defendants allege that Plaintiff assented

to the Agreements when she opened her Chase bank account (the "Account"). (*Id.* at 1.)

Defendants claim that the arbitration provisions in both Agreements (the "Arbitration

Provisions") cover Plaintiff's "claims against both Chase and EWS, which involve her Account,

transactions from her Account, and use of the Zelle service to make those transactions from her

Account." (*Id.* at 7.) Specifically, the arbitration clause within the DAA states "[c]laims or disputes

between you and us about your deposit [and] transactions involving your deposit account, . . . and

any related service with [Chase]" are covered. (*Id.*) The arbitration clause within the DSA states

that "ANY DISPUTE RELATING IN ANY WAY TO THIS AGREEMENT, OR YOUR USE OF

THE DIGITAL PLATFORMS AND SERVICES, WILL BE RESOLVED BY BINDING

ARBITRATION." (*Id.* (capitalization in original).)

Plaintiff rejects Defendants' assertions, arguing that (1) the Arbitration Provisions are both

procedurally and substantively unconscionable and, therefore, unenforceable; (2) Plaintiff's claims

do not fall within the scope of the Arbitration Provisions; and (3) Defendant Zelle is not entitled

to enforce the Arbitration Provisions. (*See generally* ECF No. 30.) Plaintiff also alleges that if she

is compelled to proceed in arbitration against Chase, her claims against Zelle should not be stayed. (*Id.*)

### III.     LEGAL STANDARD

In assessing whether there is an enforceable arbitration agreement, courts must affirmatively answer two questions: (1) whether the parties entered into a valid arbitration agreement and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). Further, it is undisputed that there is a "liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-26 (1991) (internal quotations omitted), and as such, "[t]here is a strong presumption in favor of arbitrability." *Richards v. Am. Acad. Health Sys., LLC.*, No. 2:20-CV-00059-KSM, 2020 WL 2615688, at *8 (E.D. Pa. May 22, 2020) (internal quotations omitted).

Federal courts apply applicable state contract law to determine whether a valid arbitration agreement exists. *See James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (internal quotations omitted); *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). Pursuant to the DAA, "all accounts and services provided to you, and any dispute relating to those accounts and services are governed by federal law and, when not superseded by federal law, the law of the state where your account is located." (ECF No. 20-1 at 21.) Here, since the Plaintiff's account is located in Pennsylvania, the Court applies Pennsylvania law pursuant to the Arbitration Provisions. (*See* ECF No. 17 ¶ 3 (noting that Plaintiff opened her account digitally and provided a Philadelphia address at Account opening).)[2] The DSA states that disputes relating

---

[2] The DAA states that "[i]f you applied for the account by mail, digitally, or through other remote means, and your address as recorded in our records was in a state where we had a

thereto are governed by New York law. (ECF No. 19-1 at 3.) Nevertheless, the Court agrees with

Defendants' assertion that "there is no substantive difference between New York and Pennsylvania

law concerning what is required as far as contract formation and whether a binding agreement to

arbitrate exists." (ECF No. 22 at 13 n. 13 (citing *Kidder, Peabody & Co. v. McKittrick & Briggs*

*Sec., Inc.*, No. 88-CV-0144, 1993 WL 166784, at *2 n.1 (E.D. Pa. May 17, 1993) (noting that

"both Pennsylvania and New York apply the basic principles of contract construction and

enforcement[,]" in applying Pennsylvania law); *G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l,*

*LLC*, No. 03-CV-10027, 2004 WL 1110423, at *6 (S.D.N.Y. May 19, 2004) ("The elements of a

contract claim are the same in Pennsylvania [and] New York . . . .")).) In Pennsylvania, "contract

formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently

definite to be enforced, and (3) consideration." *Dicent v. Kaplan Univ.*, 758 Fed. Appx. 311, 312–

13 (3d Cir. 2019) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d

Cir. 2009)) (affirming grant of motion to compel).

## IV.    DISCUSSION
### A.    Assent to the Agreements

Defendants assert that Plaintiff manifested her assent to the Agreements when she digitally

opened an account with Chase. (ECF No. 22 at 2.) More specifically, the Plaintiff agreed to

arbitrate her claims during the digital account opening process for her Account by affirmatively

clicking to acknowledge she read and accepted the terms of the Agreements and electronically

signing a Personal Electronic Signature Card, which contained the same acknowledgment that

Plaintiff had "read and agree[d]" to the DAA and DSA. (*Id.* at 2–9.) The DAA and the DSA are

---

branch at the time, then the account is located in that state, which for joint accounts will be based
on the address of the owner whose name was listed first." (ECF No. 20-1 at 21.)

"clickwrap" agreements, which this Court has routinely found to be enforceable. (*See id.* at 20–22 (citing *Pricarda v. Checkr, Inc.*, No. 5:22-CV-3180, 2022 WL 16749033, at *1, *4 (E.D. Pa. Nov. 7, 2022) (granting motion to compel arbitration where plaintiff manifested assent to terms of service by clicking an "I agree" checkbox) (collecting cases)).) Plaintiff does not dispute that clickwrap agreements are enforceable. Moreover, Plaintiff does not contend that the terms of the Agreements were insufficiently definite to be enforced or lacked consideration. (*See generally* ECF No. 30.) Thus, since the enforceability of clickwrap agreements is not in dispute, this Court finds that Plaintiff manifested her assent to the Agreements.

### B.     Validity of the Agreements

In assessing the validity of the Arbitration Provisions and whether or not they are unconscionable as alleged by the Plaintiff in this case, this Court must evaluate whether there is both procedural and substantive unconscionability in the provisions. *See Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 230 (3d Cir. 2008) (describing challenger's burden to show the contract is "*both* procedurally and substantively unconscionable") (emphasis in original) (citation omitted). In assessing procedural unconscionability, here Plaintiff argues that the Arbitration Provisions are procedurally unconscionable "'take-it-or-leave-it' contracts because Chase unilaterally designed the terms of the agreement and [P]laintiff was required to agree to those terms to open her checking account." (ECF No. 30 at 11.) Defendants argue that the mere assertion that the Plaintiff had to agree to the terms of the agreement in order to open an account does not, in and of itself, equate to the agreement being an unconscionable "contract of adhesion." (ECF No. 31 at 11 n. 12.) In its review, the Court agrees with Defendants that simply asserting that the Arbitration Provisions are "contracts of adhesion" does not make them procedurally unconscionable, at least not "without more." *See, e.g.*, *Seus v. John Nuveen & Co.*, 146 F.3d 175, 184 (3d Cir. 1998) ("A

contract of adhesion is invalid only where its terms unreasonably favor the other party."). There

was nothing presented to the Court that would satisfy the 'need for more' to find the Arbitration

Provisions unconscionable. Additionally, in this case, there is evidence that suggests the contrary.

For example, the 60 day opt-out provision of the DAA also "seriously undermines the contention

that [it] is procedurally unconscionable." (ECF No. 31 at 11 n.11 (referencing ECF Nos. 20-1 to

20-4) (quoting *Stephenson v. AT&T Servs., Inc.*, No. 21-CV-0709, 2021 WL 3603322, at *7 (E.D.

Pa. Aug. 13, 2021)).) Thus, this Court finds no procedural unconscionability. The Arbitration

Provisions must be permitted to stand, as a finding of unconscionability requires *both* substantive

*and* procedural unconscionability *See Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 230 (3d

Cir. 2008).[3]

Thus, this Court finds that the Arbitration Provisions are valid and enforceable.

## C.      Scope of the Agreement

The arbitration provision in the DAA covers "[a]ny claims or disputes arising from or

relating to this agreement" and "any dispute relating in any way to your account or transactions,"

including any "[c]laims or disputes between you and us about your deposit account, transactions

involving your deposit account, . . . and any related service with us." (ECF No. 20-1 at 25.)

Plaintiff's claims are based upon her deposit account and transactions involving her deposit

account. (ECF No. 1 ¶¶ 54-64.) Moreover, the arbitration provision in the DSA covers "any dispute

relating in any way to . . . your use of the digital platforms and services[,]" which are defined as

including "websites or mobile applications." (ECF 19-1 at 41.) Plaintiff's allegations stem directly

from the use of Defendants' mobile applications. (*See, e.g.*, ECF No. 1 ¶ 1 (allegations concerning

---

[3] Because this Court finds that the Arbitration Provisions are not procedurally
unconscionable, it need not address the parties' arguments regarding substantive
unconscionability.

"the Zelle mobile application") and ¶ 147 (referring to the "Chase banking mobile application").)

Plaintiff's interpretation to the contrary is strained and unconvincing. Thus, this Court finds that

Plaintiff's claims fall within the scope of the Arbitration Provisions.

### D.      Zelle's Right to Compel Arbitration

Plaintiff contends that Zelle cannot enforce the Arbitration Provisions as a third-party

beneficiary because it is "not a signatory to, or even referenced in, the Chase agreements." (ECF

No. 30 at 14.) Defendants argue to the contrary, pointing to language in both the DAA and DSA

requiring claims against third-parties "involved in" claims against Chase to be arbitrated:

> If a third party is also involved in a Claim between you and us, ***then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration.***

(*See* ECF No. 31 at 14 (citations omitted) (emphases added).) Plaintiff's suggestion that Zelle must

be individually named in the Arbitration Provisions to qualify as a third-party beneficiary is

contrary to Pennsylvania law. *See Scarpitti v. Weborg*, 609 A.2d 147 151 (Pa. 1992) (holding that

third-parties that are "part of a limited class of persons intended to benefit from the agreement"

qualify as third-party beneficiaries). Plaintiff points to *White v. Sunoco* in which a Court sitting in

this District declined to enforce an arbitration clause in a credit card agreement between Citibank

and the plaintiff, a Citibank customer as "[t]he most instructive case on this matter." (ECF No. 30

at 15 (citing *White v. Sunoco*, 189 F.Supp. 3d 486, 496 (E.D. Pa. Aug. 24, 2011).) In *White*, the

arbitration provision limited its application to "you" and "us" (i.e. Citibank and the plaintiff) and

did not state that it covered claims against third parties. *White*, 189 F.Supp. 3d at 493. Given that

the Arbitration Provisions in this matter expressly cover claims against third-parties, whereas the

arbitration agreement at issue in *White* did not, Plaintiff's reliance on *White* does not persuade the

Court in this instance.

Because this Court finds that Zelle may enforce the Agreements as a third-party beneficiary, it need not address the parties' arguments regarding equitable estoppel.

## V.      CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration and Stay This Action is granted. This matter shall proceed to arbitration as outlined in the Arbitration Provisions, and this matter shall be stayed pending the completion of the arbitration. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**